UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAKE PECCIA,

Plaintiff,

v.

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
AND REHABILITATION,

Defendant.

No.  2:18-cv-03049 JAM AC

FINDINGS AND RECOMMENDATIONS

Plaintiff is proceeding in this action pro se, and the case was accordingly referred to the undersigned by Local Rule 302(c)(21).  The sole defendant in this case, the California Department of Corrections and Rehabilitation ("CDCR"), moves for summary judgment on all claims, ECF No. 69, and plaintiff opposes the motion, ECF Nos. 77, 78.  The matter come on for hearing on July 28, 2021.  ECF No. 93.  For the reasons explained below, it is recommended that defendant's motion be GRANTED, that summary judgment be entered in defendant's favor, and that this case be closed.

## I.       Background

Plaintiff brought this discrimination and retaliation case against his employer, the California Department of Corrections and Rehabilitation ("CDCR"), through counsel on November 26, 2018.  ECF No. 1.  Counsel subsequently withdrew, ECF No. 16, and in February

1

1  2020 the case was referred to the undersigned for pre-trial matters in light of plaintiff's pro se

2  status, ECF No. 23.  On April 9, 2021, plaintiff moved to file a supplemental pleading pursuant to

3  Fed. R. Civ. P. 15(d).  ECF No. 50.  That motion was denied, ECF Nos. 68, 76, 89, and the initial

4  complaint remains operative.

5  Plaintiff is a prison nurse who alleges that CDCR discriminated against him based on his

6  male sex and retaliated against him for complaints made regarding the discrimination.  ECF No. 1

7  at 1-5.  Plaintiff brings four causes of action: (1)  Breach of Title VII of the Civil Rights Act of

8  1964, 42 U.S.C. § 2000e-16; (2) Retaliation in Violation of Title VII of the Civil Rights Act of

9  1964, 42 U.S.C. § 2000e-16; (3) Breach of California Govt. Code Section 12940, et seq.,

10  Discrimination on the Basis of Gender; and (4) Retaliation in Violation of Government Code

11  Section 12940, et seq.  Id. at 5-7.  The discrimination claims are based on plaintiff's allegedly

12  sex-based reassignment from a post exclusively assigned to the Folsom Women's Facility to a

13  post assigned some days to the women's facility and some days to the men's facility.  The

14  retaliation claims are based on a decision to reject plaintiff from probation, which followed

15  plaintiff's complaint regarding sex discrimination.  Plaintiff's employment was ultimately not

16  terminated.

17  ## II.    The Motion

18  Defendant seeks judgment in its favor on all claims.  ECF No. 69.  Plaintiff filed an

19  opposition to defendant's statement of undisputed facts, which includes several exhibits (ECF No.

20  77), and a supplemental argument (ECF No. 78).[1]  Defendant objected to several of plaintiff's

21  exhibits as irrelevant and lacking authentication (ECF No. 82) and filed a reply brief (ECF No.

22  83).

23  Shortly prior to hearing on the motion, plaintiff submitted 29 exhibits to the court on an ex

24  parte basis.  At the hearing plaintiff was directed to file these documents on the record, and he

25  subsequently did so.  ECF No. 92.  Defendant objected at hearing to consideration of the untimely

26

27  [1]  Defendant asked the court not to consider plaintiff's opposition, on the grounds that it was
untimely filed.  In the interests of justice and a ruling on the merits, all filings have been

28  considered; evidentiary objections are addressed below.

1  submitted documents; the court informed the parties that if upon review it appeared that any of

2  the new exhibits were appropriate for consideration in opposition to summary judgment, the court

3  would provide defendant an opportunity to respond to them.  The documents have been reviewed,

4  and the court finds as explained further below that none of them raise a triable issue of material

5  fact even if considered in opposition to summary judgment.  Accordingly, further response by

6  defendant is unnecessary.

7                    **III.    Standard for Summary Judgment**

8          Summary judgment is appropriate when the moving party "shows that there is no genuine

9  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

10  Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

11  of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627

12  F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

13  moving party may accomplish this by "citing to particular parts of materials in the record,

14  including depositions, documents, electronically stored information, affidavits or declarations,

15  stipulations (including those made for purposes of the motion only), admissions, interrogatory

16  answers, or other materials" or by showing that such materials "do not establish the absence or

17  presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

18  support the fact." Fed. R. Civ. P. 56(c)(1).

19          Summary judgment should be entered, "after adequate time for discovery and upon

20  motion, against a party who fails to make a showing sufficient to establish the existence of an

21  element essential to that party's case, and on which that party will bear the burden of proof at

22  trial." Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

23  of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.  In such

24  a circumstance, summary judgment should "be granted so long as whatever is before the district

25  court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

26  56(c), is satisfied." Id.

27          If the moving party meets its initial responsibility, the burden then shifts to the opposing

28  party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

1  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the

2  existence of this factual dispute, the opposing party may not rely upon the allegations or denials

3  of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

4  admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

5  Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a

6  fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty

7  Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809

8  F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a

9  reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248.

10  In the endeavor to establish the existence of a factual dispute, the opposing party need not

11  establish a material issue of fact conclusively in its favor.  It is sufficient that "'the claimed

12  factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

13  truth at trial.'"  T.W. Elec. Service, Inc., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v.

14  Cities Serv. Co., 391 U.S. 253, 288-89 (1968)).  Thus, the "purpose of summary judgment is to

15  pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

16  trial."  Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

17       "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

18  court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls

19  v. Cent. Costa County Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is

20  the opposing party's obligation to produce a factual predicate from which the inference may be

21  drawn.  See Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

22  demonstrate a genuine issue, the opposing party "must do more than simply show that there is

23  some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations

24  omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

25  non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391

26  U.S. at 289).

27  ////

28  ////

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.   Facts**

A.   <u>The Record Before the Court</u>

Defendant's statement of undisputed facts is located at ECF No. 69-2, and is supported by excerpts of plaintiff's deposition (ECF No. 69-3); the declaration of Kimberly Masbad, former Director of Nursing at Folsom State Prison, with exhibits (ECF No. 69-4); and the declaration of Susan Burnett-Hampson, former Chief Nurse Executive at Folsom State Prison, with exhibits (ECF No. 69-5).

Plaintiff's statement of undisputed facts is located at ECF No. 77-2, and is supported by his own declaration (ECF No. 77-3) and exhibits including: a photocopy of CDCR internal regulations (ECF No. 77-4 Ex. A); a letter rescinding plaintiff's rejection during probation (<u>id.</u> at Ex. B); a performance report dated July 17, 2014 with an unsigned addendum (<u>id.</u> Ex. C); a performance report for the same date with a signed addendum (<u>id.</u> Ex. D); a memorandum regarding performance expectations to plaintiff from Ms. Burnett-Hampson (<u>id.</u> Ex. E); a memorandum requesting a letter of reprimand from Burnett-Hampson to Larry Fong, CEO (<u>id.</u> Ex. F); an e-mail from Burnett-Hampson to plaintiff dated January 13, 2015 (ECF No. 77-5, Ex. G); various communications involving Burnett-Hampson, plaintiff, and other CDCR employees (<u>id.</u> at Ex. H); a memorandum from Larry Fong regarding plaintiff's EEO complaint (<u>id.</u> at Ex. I); communications regarding plaintiff's merit salary adjustment (<u>id.</u> Ex. J); e-mails between Ms. Masbad and Kishia Ogans on which plaintiff was not copied (<u>id.</u> Ex. K); a memorandum regarding the use of chaperones at the women's prison dated October 17, 2014 (<u>id.</u> Ex. L); a memorandum re: employee conduct from Burnett-Hampson to Dr. Angela Swarthout of CSP Sacramento (<u>id.</u> Ex. M); a memorandum regarding plaintiff's inappropriate behavior from Masbad to Burnett-Hampson dated October 10, 2014 (<u>id.</u> Ex. N); e-mails between Burnett-Hampson and Karen Brown (<u>id.</u> Ex. O); and a marked-up copy of "Inmate Medical Services Polices & Procedures" (<u>id.</u> Ex. P).

Defendant filed objections to plaintiff's exhibits, arguing that Exhibits A, C, D, E, F, G, H, J, L, and O are irrelevant, and that exhibits C, D, L, and O are not authenticated and that plaintiff cannot authenticate the documents because he has no personal knowledge of them.  ECF

No. 82 at 2-5.  Defendant also replied to plaintiff's statement of undisputed facts.  ECF No. 81.

Plaintiff made a written request for oral argument on the motion, ECF No. 85, in which he stated that he wished to present allegedly forged documents to the court for visual inspection. Plaintiff represented that defense counsel had already seen the alleged forgeries.  Id.  Because the hearing was to be held via teleconferencing, court staff provided a link for online submission of documents.  In addition to the three documents relevant to the alleged forgery (ECF Nos. 92-1, 92-2, 92-3), plaintiff submitted more than two dozen supplemental exhibits which have now been filed on the docket (ECF No. 92).

B.  Evidence Considered

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment."  Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002).  "Authentication is a 'condition precedent to admissibility,' and this condition is satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'"  Id. (quoting Fed. R. Evid. 901(a)).  Unauthenticated documents may not be considered on a motion for summary judgment.  Id.; Cristobal v. Siegel, 26 F.3d 1488, 1494 (9th Cir. 1994); Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550–51 (9th Cir. 1989).  However, although the rules governing admissibility apply on summary judgment, they do not apply with full force—at least as to the party opposing summary judgment.  See Fed. R. Civ. P. 56(c)(2); Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form.  We instead focus on the admissibility of its contents."), cert. denied, 541 U.S. 937 (2004).  Particularly when a litigant is proceeding in pro se, the focus is on whether the documents at issue could be made admissible at trial.  See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003).

CDCR raises an authentication objection to plaintiff's exhibits C, D, L and O.  ECF No. 82 at 2-4.  Plaintiff submitted a declaration stating that Exhibit C is a "true and correct copy of the Susan Burnett-Hampson forgery that was submitted to Rejection on Probation as an adverse action."  ECF No. 77-3 at 2.  Plaintiff states Exhibit D is a "true and correct copy of the actual probation evaluation document that bears my signature."  Id.  Plaintiff states Exhibit L is a "true

6

1    and correct copy of a memorandum that shows male nurses were being treated differently as of

2    October 17, 2014." Id.  Plaintiff states Exhibit O is a "true and correct copy of a false statement

3    given to Karen Brown regarding the forgery sent by Susan Burnett-Hampson." Id. at 3.  CDCR's

4    only argument regarding authentication is that plaintiff does not have personal knowledge of the

5    documents.  ECF No. 82 at 2-4.

6           Defendant's authentication objections are overruled.  Though the documents have not

7    been submitted in admissible form, their contents could be made admissible at trial through the

8    testimony of the people involved.  See Aholelei v. Hawaii Dept. of Public Safety, 220 Fed. Appx.

9    670, 672 (9th Cir. 2007) (district court abused its discretion in not considering plaintiff's evidence

10   at summary judgment, "which consisted primarily of litigation and administrative documents

11   involving another prison and letters from other prisoners" which evidence could be made

12   admissible at trial through the other inmates' testimony at trial).  Plaintiff's characterizations of

13   the exhibits, however, are not evidence and will not be considered as such.

14          Defendant's relevance objections are likewise overruled.  Exhibits need not be dispositive

15   of the issues in order to be considered relevant.  In the interest of justice, the court will consider

16   all of plaintiff's exhibits.

17          The court has also reviewed the documents belatedly filed by plaintiff on July 28, 2021.

18   ECF No. 92.[2]  Plaintiff's delay would fully justify disregard of the exhibits at ECF No. 92.  The

19   court has nonetheless reviewed the documents in an abundance of caution, to ensure that a pro se

20   plaintiff does not suffer summary judgment due only to non-compliance with procedural rules.

21   Many if not most of these exhibits are duplicative of those already filed; the remainder are

22   cumulative or irrelevant.  None of the newly presented exhibits materially change the state of the

23   evidence.  Plaintiff's one newly presented witness declaration is discussed below in relation to his

24   retaliation claims.

25   ////

26

---

27   [2]  The motion for summary judgment was filed May 17, 2021.  ECF No. 69.  Plaintiff requested
     an extension to file his opposition, which the court granted.  ECF No. 74.  Briefing on the motion
28   had concluded entirely by July 9, 2021.  ECF No. 74.

C. Undisputed Facts of the Case

Unless otherwise specified, the following facts are either expressly undisputed by the parties or have been determined by the court, upon a full review of the record, to be undisputed by competent evidence.

1. Facts Underlying the Employment Dispute

Plaintiff began working for CDCR in May 2013, as a nurse at Solano State Prison.  He transferred to Folsom State Prison on or about October 1, 2013.  Complaint ¶ 8.  Folsom State Prison A Facility houses medium custody male inmates, while B Facility houses medium custody female inmates; B Facility is also known as Folsom Women's Facility.[3]  The two facilities are approximately a mile apart.  Decl. of K. Masbad (ECF No. 69-4) ¶ 7.  Plaintiff understood that in the position of SRN II, he could be assigned to any Folsom program area where medical and nursing services are provided.  ECF No. 69-3 at 7 (July 2, 2019 Deposition of J. Peccia, 72:2-21).  Beginning about six months after his transfer to Folsom and until the events described below, plaintiff worked exclusively at the women's facility.  Complaint ¶ 8.

As the Director of Nursing, Kimberly Masbad had authority to approve or deny shift changes among Folsom nursing staff.  Decl. of K. Masbad ¶ 2.  For some time, SRN IIs at Folsom were permitted to swap their shifts with each other with supervisor approval.  Id.  Around May 2, 2014, Masbad changed this practice by limiting shift swaps between SRN IIs to twice a month.  Id.  Plaintiff was upset about the change.  Id. at ¶ 3.  On or about May 6, 2014, plaintiff asked Masbad to change his Regular Days Off to Friday and Saturday; he pointed out that there was a vacant SRN II shift with those Regular Days Off.  Id. at ¶ 4.  Masbad informed plaintiff that he could switch to the vacant shift if he wanted to do so, but that she would not change the Regular Days Off for his assigned position.  Id.

////

---

[3]  See https://www.cdcr.ca.gov/facility-locator/fsp/#:~:text=Folsom%20State%20Prison%20A%20Facility,includes%20a%20Minimum%20Support%20Facility.  To the extent that the record on summary judgment lacks clarity about the status of Folsom Women's Facility, the court takes judicial notice of this fact.  See Fed. R. Evid. 201(b).

On or about July 17, 2014, plaintiff was reassigned to the vacant post that had Friday and Saturday as Regular Days Off.  Id. at ¶ 7.  This post reassignment gave plaintiff the days off that he had wanted, but it changed the physical location of his shifts in ways that he did not want.  Id.  In the new post, he was assigned to work some days each week at the men's facility and some at the women's facility.  Id.  Plaintiff was given the required 15-day notice of this change, but he was not given an opportunity to consent or object.  ECF No. 81 at 5.  Plaintiff's pay, benefits and classification were unchanged as a result of this transfer; the only change was plaintiff's assignment to the men's facility several days each week.  Decl. of K. Masbad ¶ 7.

Moving plaintiff into this position opened a shift at the women's facility several days each week that could be filled by a female licensed healthcare provider, if Masbad determined that was needed.  Decl. of K. Masbad ¶ 9.  The Women's Facility at Folsom has a Chaperone Policy applicable to medical exams, which states that for "[e]ach female medical visit, which requires an examination by a male health care provider, shall be attended by a female licensed health care staff person including Certified Nursing Assistants (CNA).  The female licensed health care staff shall be present for the duration of the medical visit and is required to be present regardless of whether an unclothed examination is necessary."  Id. at ¶ 10; Exhibit 2 (Chaperone Policy) ¶ F.

After plaintiff was informed of the change to his post, he told a co-worker, Forest Clark, that he believed he was being discriminated against because of his gender.  Complaint ¶ 11. Clark informed plaintiff that he made a discrimination complaint on plaintiff's behalf on July 23, 2014.  Id.

Plaintiff's direct supervisor at the time was Susan Burnett-Hampson.  Declaration of Susan Burnett-Hampson (ECF No. 69-5) ¶ 2.  Ms. Burnett-Hampson recommended on an unspecified date that plaintiff be rejected from probation.  Id. at ¶ 6.  A formal Notice of Rejection During Probation was signed by the institution's CEO on September 12, 2014, ECF No. 92-10 at 2-10 (Pl. Ex. 10-J), and received by plaintiff on or about September 22, 2014, Complaint ¶ 14.

////

////

9

2.   <u>Additional Material Facts Regarding Plaintiff's Employment History at Folsom</u>

On January 29, 2014, plaintiff received his First Report of Performance for Probationary Employees, which noted problems interacting with staff.  ECF No. 69-5 at 4-7 (Decl. of S. Burnett-Hampson, Ex. 1).  On May 6, 2014, plaintiff received a Second Report of Performance for Probationary Employees that noted continued problems with demeanor and interactions with staff.  <u>Id.</u> at 8-12 (Decl. of S. Burnett-Hampson, Ex. 2).  Both reports identified performance strengths as well as weaknesses.  On June 9, 2014, plaintiff received a formal Letter of Instruction (LOI) from the Director of Nurses, Kimberly Masbad, documenting ongoing performance and attitude problems.  ECF No. 69-4 at 5-7 (Decl. of K. Masbad, Ex. 1).[4]  This LOI included Masbad's account of the allegedly argumentative manner in which plaintiff had requested to have Fridays and Saturdays off while remaining in the same post he then held.  <u>Id.</u>

An interim Report of Performance for Probationary Employees, dated July 17, 2014 and signed by plaintiff and Burnett-Hampson on August 6, 2014, notes several areas of "standard" performance and several other areas needing improvement.  ECF No. 77-4 at 17 (Pl. Ex. C).[5]  An addendum written by Burnett-Hampson summarizes a conversation that took place on July 17, in which plaintiff was admonished about his continued lack of courtesy and cooperation with his supervisors, peers and subordinates; plaintiff was specifically reprimanded for his "continued opposition to Leadership" regarding schedule changes.  <u>Id.</u> at 18.

As noted above, Masbad changed plaintiff's post assignment on or about July 17, 2014, and the formal gender discrimination complaint was made on plaintiff's behalf on July 23, 2014.

On August 4, 2014, Burnett-Hampson sent plaintiff a memo regarding performance expectations.  The memo stated that several other nurses had reported plaintiff was complaining about his reassignment and complaining that the change was gender based.  One source, who can

---

[4]  The aspects of performance criticized in the LOI involved demeanor and interactions with staff, not medical care or interactions with inmates.

[5]  There are three versions of this document, which vary slightly.  <u>See</u> ECF No. 77-4 at 17-18, 20-21; ECF Nos. 92-1, 92-2, 92-3.  One version appears to be the original, and two appear to be photocopies of the original, on which corrections have been handwritten after the fact.  These variances are the basis for plaintiff's allegation of forgery.  At hearing, plaintiff agreed that the signatures on the signature line, whether original or photocopy, are his signature.

1    only have been Ms. Masbad, is quoted as saying, "He had been asking for the re-assignment so he

2    could have a change of days off for months.  I did mention to him the change of positions would

3    also allow for better coverage for female exams at FWP due to a POLICY REQUIREMENT that

4    female healthcare staff attend all female inmate exams."  ECF No. 77-4 at 23 (Pl. Ex. E).

5         On or about September 22, 2014, plaintiff was served with a Notice of Rejection During

6    Probation; the Notice had been signed on September 12, 2014.  Complaint ¶ 14; ECF No. 92-10

7    at 2-10 (Pl. Ex. 10-J).  The adverse action was rescinded in October, on the recommendation of a

8    Skelly officer[6] due to inadequate progressive discipline.  ECF No. 77-4 at 14 (Pl. Ex. B).

9         Following plaintiff's reinstatement, Masbad and Burnett-Hampson continued to document

10   what they considered inappropriate workplace behavior by plaintiff.  See, e.g., ECF No. 77-4 at

11   25-26 (Pl. Ex. F) (Request for Adverse Action submitted to CEO Fong by Burnett-Hampson,

12   dated January 25, 2015).

13                              **V.     Analysis**

14     A.  Discrimination Claims

15        Plaintiff's First Cause of Action alleges sex discrimination under Title VII, 42 U.S.C. §

16   2000e-16; his Third Cause of Action alleges gender discrimination under California Government

17   Code § 12940 (the Fair Employment and Housing Act, or "FEHA").  The standard for proving

18   intentional discrimination under Title VII applies to FEHA discrimination claims.  Los Angeles

19   County Dep't of Parks & Recreation v. Civil Serv. Com., 8 Cal. App. 4th 273, 280 (1992).  The

20   burden-shifting regime established by the U.S. Supreme Court in McDonnell Douglas Corp. v.

21   Green, 411 U.S. 792, 802 (1973), applies under both statutes.  Ortiz v. Georgia Pacific, 973 F.

22   Supp. 2d 1162, 1172 (E.D. Cal. 2013) (citations omitted).  Because the applicable legal standards

23   and the factual basis for the two claims are the same, the court considers them together.

24        To state a prima facie case of discrimination, plaintiff must show that: (1) he belongs to a

25   protected class, (2) he was performing according to his employer's legitimate expectations, (3) he

26

27   ---

     [6]  A "Skelly hearing" is a pre-disciplinary due process hearing provided to civil service/public
     sector employees in the wake of the California Supreme Court decision Skelly v. State Pers. Bd.,
28   15 Cal. 3d 194, 220 (1975).

suffered an adverse employment action, and (4) other employees with qualifications similar to his own were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.  Peterson v. Hewlett Packard Co., 358 F.3d 599, 604 (9th Cir. 2004).  If plaintiff establishes a prima facie case, the burden shifts to the defendant to establish a legitimate reason for the adverse employment action.  Fonseca v. Sysco Food Services of Arizona, Inc., 374 F.3d 840, 849-850 (9th Cir. 2004).  If the employer carries its burden, plaintiff must demonstrate that the stated reasons are merely a pretext for discrimination. Id.

"It is well established that both sexes are protected from discrimination under Title VII." Ortiz, 973 F. Supp. 2d at 1172; see also Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998) ("Title VII's prohibition of discrimination 'because of ... sex' protects men as well as women.").  However, plaintiff fails to establish a prima facie case of employment discrimination because the evidence does not show he was subjected to an adverse employment action within the meaning of Title VII and FEHA.

Plaintiff's discrimination claims are predicated on his transfer from a post in which he worked full time at the women's facility to a post involving some days each week at the men's facility.  Complaint ¶ 10.  "Reassignment of job duties can be an adverse employment action and whether an assignment is materially adverse depends upon the circumstances of the particular case and is to be judged from the perspective of a reasonable person in Plaintiff's position considering all the circumstances."  Sanchez v. California, 90 F. Supp. 3d 1036, 1057 (E.D. Cal. 2015).  Under California law, "[a] transfer is not an adverse employment action when it is into a comparable position that does not result in substantial and tangible harm."  McRae v. Dep't of Corr. & Rehab., 142 Cal. App. 4th 377, 393, (2006).

In this case, plaintiff cannot establish a materially adverse employment action under federal or California law.  Plaintiff's job classification was unchanged, his pay was unchanged, and all benefits were unchanged; he was simply directed to work at both the men's and women's facilities instead of exclusively at the women's facility.  Decl. of K. Masbad ¶ 7.  The changed conditions attendant to the change in post were limited to plaintiff's physical working location

1    and the gender(s) of the inmates to whom plaintiff provided nursing services.  These changes do

2    not rise to the level of substantial and tangible harm from reassignment.  Plaintiff's post

3    reassignment was clearly undesirable to him, but it was not materially adverse.

4         Involuntary relocation from one physical facility to another can rise to the level of adverse

5    employment action if it involves "[t]he removal of or substantial interference with work facilities

6    important to the performance of the job."  Chuang v. Univ. of California Davis, Bd. of Trustees,

7    225 F.3d 1115, 1126 (9th Cir. 2000) (finding triable issue of fact where academic researchers' lab

8    was involuntarily moved to a facility that was physically inadequate for their ongoing research

9    projects, leading to disruption of research, loss of grant funding, and other tangible harms).  This

10   case does not involve an relocate analogous relocation, or any interference with plaintiff's access

11   to necessary professional resources.  Rather, it involves a partial reassignment of duties and work

12   station from among those that are plainly encompassed by plaintiff's job description. [7]

13        Plaintiff's preferences regarding his assignment are not the measure of adverse

14   employment action.  "A change that is merely contrary to the employee's interests or not to the

15   employee's liking is insufficient," to constitute an adverse action; "the mere fact that an employee

16   is displeased by an employer's act . . . does not elevate that act" to the level of adverse action.

17   Akers v. County of San Diego, 95 Cal. App. 4th 1441, 1454-55 (2002); see also, Gonzales v.

18   Marriott Int'l, Inc., 142 F. Supp. 3d 961, 983-84 (C.D. Cal. 2015) ("Gonzales's allegations

19   regarding the inconvenience she experienced in changing her work schedule and missing lunches

20   and social events are not sufficient to plead adverse employment action as a matter of law.");

21   Jaroslawsky v. City & County of San Francisco, No. C 12–04949 JSW, 2013 WL 1287431, *2

22   (N.D. Cal. Mar. 28, 2013) ("ordinary tribulations of the workplace… do not constitute adverse

23   employment actions").

24   _____

25   [7]  Plaintiff acknowledged in his deposition that the position description for the job he accepted
     specifically stated that his physical working location could be reassigned or redirected anywhere
26   within the medical facilities in Folsom.  ECF No. 69-3 at 7.  This scope of location is further
     reflected in his probationary performance evaluations, each of which identified the location of
27   plaintiff's position as "FSP/FWP"—even during the period that he was assigned exclusively to
     FWP.  See ECF No. 69-5 at 4-7 (1/29/14 probationary report); id. at 8-12 (5/6/14 probationary
28   report).

1    At hearing, plaintiff argued that the change was materially adverse because the men's

2    facility is more dangerous than the women's facility and male inmates are more difficult to deal

3    with than female inmates.  Be that as it may, plaintiff was working at all relevant times at an

4    institution that includes both a men's facility and a women's facility.  The parameters of his

5    position as an SRN II undisputedly included potential assignment to either facility or to both.  The

6    inherent dangers and challenges of working in the men's facility are among the ordinary

7    tribulations of being a nurse at Folsom State Prison.  The job's very real difficulty does not mean

8    that the loss of plaintiff's preferred post assignment rises to the level of an adverse employment

9    action.

10   In an analogous correctional employment context, the Ninth Circuit held that the

11   exclusion of male guards from eligibility for certain shifts in a women's facility did not support a

12   sex discrimination claim because the male guards had "not suffered any tangible job detriment

13   beyond a reduced ability to select their preferred watches."  Robino v. Iranon, 145 F.3d 1109,

14   1110 (9th Cir. 1998) (per curiam).  Like the plaintiffs in Robino, plaintiff has not suffered a

15   tangible job detriment, but only lost his preferred assignment.  Accordingly, the court concludes

16   that plaintiff did not suffer an adverse employment action within the meaning of Title VII and

17   FEHA, and thus has not established a prima facie case of discrimination.  Defendant is therefore

18   entitled to summary judgment on both claims.

19   Defendant argues in the alternative that plaintiff cannot meet his ultimate burden of

20   demonstrating discriminatory motive even if a prima facie case is assumed.  The court declines to

21   reach this issue, because there was no adverse employment action and the burden therefore does

22   not shift to defendant to articulate a legitimate, non-discriminatory reason for the reassignment.

23   The issue of pretext therefore does not arise.  However, because the pro se plaintiff has responded

24   at length to defendant's argument that the Chaperone Policy was a permissible consideration in

25   making staff assignments, the undersigned will address some of the issues raised by the parties.

26   First, the Ninth Circuit has emphasized that not all gender-conscious staffing decisions in

27   a women's correctional facility violate the legal rights of male employees.  The plaintiffs in

28   Robino, supra, challenged a policy of the Women's Community Correctional Center in Oahu,

which limited certain positions to female guards in order to protect the privacy interests of the female inmates and to reduce the risk of sexual contact between employees and inmates.  Id. at 1109.  The Court of Appeal affirmed summary judgment in favor of the Correctional Center on the male plaintiffs' Title VII claim, noting that "the conflict between the right of one sex not to be discriminated against in job opportunities and the other to maintain some level of privacy has normally been resolved by attempting to accommodate both interests through adjustments in scheduling and job responsibilities."  Id. (quoting Jordan v. Gardner, 986 F.2d 1521, 1527 (9th Cir. 1993)).  Plaintiff's post reassignment constituted an adjustment to the nursing schedule and to his job responsibilities.  Like the policy at issue in Robino, Folsom's Chaperone Policy reflects a permissible effort to protect the privacy and bodily integrity rights of female inmates.  The Chaperone Policy is, if anything, less problematic than the policy in Robino because it does not categorically limit any shifts or posts to female employees.[8]  Where a gender-conscious staffing policy has no detrimental effect on male employees' conditions of employment other than depriving them of preferred assignments, Title VII is not violated.  Id. at 1110.

Second, plaintiff argues that the Chaperone Policy itself was a discriminatory ploy instituted by Masbad and Burnett-Hampson to rid FWF of male nurses.  ECF No. 78 at 14.  As proof of this alleged discriminatory animus, plaintiff asserts that the Chaperone Policy is contrary to the generally applicable nursing policy which states (according to plaintiff) that "the RN can assess the female genitals without a chaperone."  ECF No. 78 at 14.  The exhibit that plaintiff references for this contention, ECF No. 77-5 at 48-54 (Pl. Ex. P), is not accurately quoted by plaintiff and does not support his argument.  Plaintiff's Exhibit P is an excerpt of the Nursing Services section of the Inmate Medical Services Policies and Procedures manual regarding female genitourinary complaints, which provides that a nurse (without reference to the nurse's gender) does not need "supervision" to perform an examination.  Id.  The question of what medical

---

[8]  Because there is no claim here that male nurses are categorically excluded from shifts at FWP, this case does not present the question whether sex is a bona fide occupational qualification (BFOQ).  See 42 U.S.C. 2000e-2(e)(1).  The prison environment is the one employment context in which courts have found sex to constitute a BFOQ under some circumstances.  See Teamsters Local Union No. 117 v. Wash. Dep't of Corr., 789 F.3d 979, 987 (9th Cir. 2015) (and cases cited therein).

15

1    services a nurse may provide without supervision is different from the question of who must be in

2    the room.  A chaperone is not the same thing as a supervisor, and the fact that a nurse does not

3    need supervision by a higher-ranking medical professional to perform an examination is not

4    inconsistent with requiring a chaperone's presence.  Indeed, the Chaperone Policy specifies that a

5    female Certified Nursing Assistant (CNA) may serve as a chaperone when an examination is

6    performed by a male medical provider,[9] and a CNA clearly would not be a supervisor of the

7    doctor or nurse performing the examination.  Because the cited section of the Nursing Services

8    Policy and the Chaperone Policy address two different things, there is no conflict between them

9    that could support an inference of anti-male discrimination generally or pretext in the decision to

10   reassign plaintiff.

11        Because plaintiff's post reassignment did not rise to the level of an adverse employment

12   action, the court will not further consider plaintiff's evidence and argument as to pretext or the

13   validity of the Chaperone Policy.  Defendant is entitled to summary judgment on plaintiff's First

14   and Third Causes of Action.

15        B.  Retaliation Claims

16        Plaintiff's Second Cause of Action alleges retaliation under Title VII, and his Fourth

17   Cause of Action alleges retaliation under FEHA.  Both claims are based on the allegation that

18   defendant's attempt to reject plaintiff from probation was an act of retaliation for his complaints

19   of sex discrimination.  In order to make out a prima facie case of retaliation under both statutes, a

20   plaintiff must show that (1) he was engaging in protected activity, (2) the employer subjected him

21   to an adverse employment decision, and (3) there was a causal link between the protected activity

22   and the employer's action.  Dawson v. Entek Int'l, 630 F.3d 928, 936 (9th Cir. 2011); Poland v.

23   Chertoff, 494 F.3d 1174, 1180 (9th Cir. 2007); Yanowitz v. L'Oreal USA, Inc., 36 Cal.4th 1028,

24   1042 (2005).  The familiar McDonnell Douglas burden shifting regime applies.  See Villiarimo v.

25   Aloha Island Air, Inc., 281 F.3d 1054, 1064 (9th Cir. 2002).

26   ////

27

28   _____

[9]  See Ex. 2 to Decl. of K. Masbad.

16

1       A plaintiff engages in protected activity if he opposes employment practices based on a

2   "reasonable belief" that the employer's actions are unlawful.  Moyo v. Gomez, 40 F.3d 982, 984

3   (9th Cir. 1994) (quoting EEOC v. Crown Zellerbach Corp., 720 F.2d 1008, 1012 (9th Cir. 1983)).

4   Plaintiff's sex discrimination complaint clearly constitutes protected activity.

5       In the retaliation context, an "adverse employment action" means "any adverse treatment

6   that is based on a retaliatory motive and is reasonably likely to deter the [plaintiff] or others from

7   engaging in protected activity."  Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000); accord

8   Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000) ("Only non-trivial employment

9   actions that would deter reasonable employees from complaining about [civil rights] violations

10  will constitute actionable retaliation.").  Although plaintiff was ultimately not rejected from

11  probation, the issuance of a Notice of Rejection During Probation is reasonably likely to deter an

12  employee from complaining about discrimination.  Accordingly, the unsuccessful attempt to

13  reject plaintiff constitutes an adverse action for purposes of the retaliation claims.

14      A plaintiff may establish a causal link between the alleged protected activity and the

15  alleged adverse action by circumstantial evidence, including the employer's knowledge of the

16  protected activity and the proximity in time between the protected action and the adverse

17  employment act.  See Dawson, 630 F.3d at 936; Jordan v. Clark, 847 F.2d 1368, 1376 (9th Cir.

18  1988).  Here, the formal complaint of discrimination was made on July 23, 2014, and the Notice

19  of Rejection During Probation was dated September 12, 2014.  In between those dates, Burnett-

20  Hampson—who recommended plaintiff's rejection—was made aware that plaintiff had been

21  expressing his displeasure both about his reassignment and his belief that it was impermissibly

22  sex-based.  ECF No. 77-4 at 23 (8/4/14 memo to plaintiff from Burnett-Hampson).  This

23  chronology is sufficient to make out a prima facie case.

24      Accordingly, the burden shifts to defendant to articulate a legitimate, non-discriminatory

25  reason for issuing the probation rejection notice.  See Manatt v. Bank of Am., N.A., 339 F.3d

26  792, 800 (9th Cir. 2003).  Defendant points to the record of plaintiff's performance problems

27  predating the notice.  Problematic job performance or failure to satisfy probation standards is a

28  legitimate and non-discriminatory reason for the adverse action.  Accordingly, it becomes

plaintiff's burden to prove that this asserted reason is pretextual.  See id.  In this context, "[w]hen the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial.  In contrast, when direct evidence is unavailable . . . and the plaintiff proffers only circumstantial evidence that the employer's motives were different from its stated motives, we require 'specific' and 'substantial" evidence of pretext to survive summary judgment."  Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1066 (9th Cir. 2003), as amended (Jan. 6, 2004) (quoting Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1219–20 (9th Cir. 1998)).

Plaintiff has presented no direct evidence of retaliatory intent, and therefore must identify "specific" and "substantial" circumstantial evidence of pretext to survive summary judgment.  Id.  He has not done so.  Plaintiff disputes the authenticity and dates of various performance review documents upon which defendant relies, see ECF No. 81 at 10-11, but plaintiff's own evidence defeats a finding of pretext even without reliance on the disputed documents.[10]  Plaintiff's Exhibit K in opposition to summary judgment is a series of emails from Kimberly Masbad to various CDCR officials.  A message dated May 30, 2014, demonstrates that Masbad was dissatisfied with plaintiff's job performance; she reports having "had several bad encounters with him" and explains that plaintiff "has a problem with authority, he wants to argue with me on everything and becomes loud and aggressive if I do not agree with him or let him have his way."  ECF No. 77-5 at 34.  Masbad seeks guidance on how to proceed with supervision in light of her opinion that plaintiff is "NOT… management material."  Id.  Another email, dated June 13, 2014, reads in full:

---

[10]  Plaintiff's "forgery" allegations regarding the July 17, 2014 progress report, which appears to have been reviewed and discussed by plaintiff and Burnett-Hampson on August 6, 2014, see supra n. 4, do not help his pretext case.  There is nothing nefarious about post-dated, handwritten corrections or annotations to a report.  Even if Burnett-Hampson improperly added a fifth "needs improvement" indicator after the fact, as plaintiff contends, and did so after the July 23 discrimination complaint was lodged, that would not constitute specific and substantial evidence of pretext when viewed in context of the evidence as a whole.  The preceding probation performance evaluations, issued in the months prior to the post reassignment which gave rise to the discrimination claim, provide a legitimate and non-discriminatory basis for plaintiff's rejection from probation.

> I would like to know what I need to do to start the process of failing Jake Peccia SRNII on probation. His 1st Probationary Report in January 2014 showed 4 needs improvements. His 2nd Probationary Report in May 2014 showed 1 needs improvement in Communication. Then I did this LOI this June for his communication and attitude. He is definitely NOT supervisor material and I want to begin the process of documenting whatever I need to do to end his probation before its too late. I'm afraid this may be a lengthy process and I do not want to miss any timeline. Please advise

Id. at 30. Both of these emails predate plaintiff's discrimination complaint, and amply demonstrate that he faced probation failure well before the protected conduct on which the retaliation claim is based.

Plaintiff presents evidence that he had received compliments from co-workers and even from his supervisors in the past, but this is irrelevant. CDCR does not need to show that plaintiff was an unsatisfactory employee at all times, and in all respects, to demonstrate that there was a non-retaliatory motive for the adverse action. Similarly, plaintiff does not create a triable issue of material fact merely by disputing the merits of his performance evaluations, or by implying that Masbad and Burnett-Hampson had a vendetta against him. To show pretext, plaintiff must identify specific and substantial evidence that their assessment of his performance and attitude were not the real reasons for the attempted probation failure, and that his complaint about gender discrimination was the true reason. This he cannot do on the record before the court.

Among the many exhibits that plaintiff submitted to the court shortly before oral argument is a declaration from Brenda Holder, a former coworker. ECF No. 92-9. This declaration is dated July 26, 2021—after briefing on the motion for summary judgment had closed, and thus after defense counsel had identified the gaps in plaintiff's evidence. Ms. Holder declares that Ms. Masbad questioned Ms. Holder obsessively about plaintiff, and that Ms. Burnett-Hampson mocked him in staff meetings. Holder also declares that, on an unspecified date, she witnessed plaintiff speaking with another FSP nurse about the discrimination complaint that Forest Clark had filed on plaintiff's behalf, and that "soon after this conversation, I learned that Mr. Peccia's Probationary Report had been changed in a negative manner." ECF No. 92-9 at 2. To the extent that plaintiff offers this declaration as evidence of a nexus between his discrimination complaint

and the adverse action, it does not create a material factual dispute.  The information about Masbad and Burnett-Hampson's general attitude toward plaintiff is irrelevant, because it does not indicate that any expressions of hostility were related to his sex discrimination complaint.  The chronological proximity of a conversation about the complaint and alleged changes to a probationary report falls far short of specific and substantial evidence of pretext.  First, the required nexus is between the complaint and the notice of probation failure, not the alleged alteration of plaintiff's final progress report before that notice.  Moreover, because the chronological relationship between complaint and adverse action was the basis of plaintiff's prima facie case, he must produce different evidence of retaliatory motive to raise a triable issue as to pretext.  See Godwin, 150 F.3d at 1220 (plaintiff must produce evidence in addition to that which was sufficient for a prima facie case in order to rebut defendant's showing).  Cumulative evidence of chronological proximity is insufficient.  Accordingly, the Holder declaration would not support pretext even if it had been timely submitted and was admissible.

Because there is ample evidence that both plaintiff's direct supervisor and the Director of Nursing were unhappy with his work and sought to terminate his probation before plaintiff's sex discrimination complaint was made, and because plaintiff puts forth no concrete evidence of retaliatory intent, plaintiff cannot prevail on his retaliation claim.  Defendant is therefore entitled to summary judgment on the second and fourth causes of action.

### VI.    Conclusion

Accordingly, for the reasons explained above, IT IS RECOMMENDED that defendant's motion for summary judgment (ECF No. 69) be GRANTED, that judgment be entered in favor of defendant, and that this case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all

parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED.

DATED: August 12, 2021

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE